Good morning, Your Honor. Thank you. May it please the Court. I'm Anne McClintock on behalf of the Federal Defender's Office and Mr. Walker. Could you move the microphone just a little closer? Thank you. Sorry. Is this better? Yeah. Okay, great. So unless the Court has questions regarding the jury instruction issue, I'd like to focus principally on the Speedy Trial Act claim that we raised. The Supreme Court in Zedner makes it clear that the enforcement of the Speedy Trial Act is mandatory. So if there's a violation, dismissal is required. There's a discretion on whether it's with or without prejudice, but dismissal is required. And our contention is that the pandemic on the record in this specific case, that the pandemic alone did not provide sufficient factual support for the ends of justice exclusions that Judge Mueller granted. The pretrial delay that was based solely on the pandemic without any kind of specific factual record far exceeded the 70 days allowed. And Zedner, I think, is a good case, different factual situation, but a good case that explains that although the Court has discretion, it's subject to delimits and it's subject to specific procedures that requires case-specific findings. So our position is that, and the timeline, I have to confess, my briefing was not great. I kept confusing myself because I kept presenting the exclusion and inclusions inconsistently. So I think the simplest way to look at this is the only factual record that we have were the judicial notice documents about the case infection rates in the district as of September of 2020. So if we start just from that point, so from the exclusion, post-October 5th of 2020, we have some 68 days that goes from October 26th through to January. It was intended to go to January 26th, but Mr. Walker got COVID at the status, so there was an exclusion from January 11th to January 26th. But just those 68 days take up most of the allowed time. There were two days early on. Let me make sure I have mine. Yes, sir. So, counsel, what I'd ask you to address here is we have a pretty extensive opinion in Olson listing precedential opinion, listing factors, obviously discussing the district court's discretion, and with a very extensive discussion of the pandemic and where judges were faced and what judges were faced with. And I think you have a real hard time demonstrating that if we apply Olson, the district court here abused its discretion. So if you could, for me, focus your argument on Olson and how even in light of Olson, you still think the district judge abused its discretion. The most focused response I have to that question is factor seven in Olson, which asks whether the district court has the ability to safely conduct a trial. And again, we're looking now at the period October 2020 to January 2021, and we're looking at the period October 2020 to January 2021. I would say that we're looking at the whole picture of it because it's a continuing problem. But at that point, what the district court did was well, let me put it this way. The defense offered alternatives to a traditional trial that would accommodate greater safety features. And this is an excerpt of record of 84 at the October 26th hearing because he wanted to try to get he jury summons and stuff. It would probably take a month. We're at the end of October. So he's asking for a jury date or trial date in December. He was suggesting jury selection could be done by a modification of Zoom or outside seating because the jury assembly room has an outside patio. He suggested they could have a smaller jury size, was willing to waive to like six or eight. He was asking for partial use of Zoom during jury selection. Are you talking about the patio? Are you talking about outside the courthouse there or that big atrium? Not the plaza with the statue. It's up on the fourth. I think it's the fourth floor. There's a jury assembly room and there is a patio outside like a balcony patio outside. So it's still within the safety features of the courthouse. You have to go through security. People aren't exposed to people walking by. None of those proposals were taken up. Instead, the court just continued the excuse me, continue the case to January. We did have that two week delay because Mr. Walker got covered at the county jail. And then we had ongoing delays until he filed his motion to dismiss. Now, he argued that didn't tell it. I'm willing to accept that that tells it because there's a sufficient number of days. The motion to dismiss, let me find my dates here, added another 61 days off the clock between the January 25th and the March 26th filing. So he had, I think I said 68 early. I'm sorry. I misspoke. And then another 60 days from October 26th to January 11th. So you already passed the 70 days. And then another 60 days plus to March 26th when he filed the motion to dismiss. And again, we continue to we have the advantage of the Olson panel decision, the original decision in early in mid-April. Excuse me. But then it continues. And then there is no effort when we actually go to trial. There was absolutely no effort. The kind of protocols that took place to assure safety, use of plexiglass and shields and masks and witnesses using clear masks were all available back in December or October of 2020. And the court refused. Are you talking about generally or in the district? In the district. Because some districts could not afford those. We had my understanding is we had them available. And trial actually started in another courtroom in May of 2021 where I believe that they use those protocols. There's certainly no record that those which which district judge, you know, Judge Shum. There's certainly nothing in the record from Judge Mueller that says we don't have the financial means to put these things together at this point. And I think although we have the burden of showing that the Speedy Trial Act was was violated. The court has to make a record. This explains its exclusionary exclusion. You're talking about May. Your your motion was March 26th. Right. But there was an ongoing opposition. So I think you could grant it as to any one point. But by the time we get to August 30th of 2021, far in excess, I think it was. What did I end up? Well, it was way over 70 days. It expired. But your motions were pending from March 26th through July 7th. Right. But only the hearing was June 10th. And under the statute, only 30 days is allowed. So that expired. I'm sorry. May 10th. So the exclusion for pendency of the motion expired June 9th, I believe. So you had another few days there as well. So I think if you look at the Olson factors, that's the strongest one that. I've lost my page. Sorry. The Olson factors. That's the strongest one. The problem is that there was nothing done between by the court. There was no finding made by the court that showed that either covered rates. She didn't inquire into vaccination rates, actually covered infection rates in the districts were higher when the case went to trial than before. I see I have two minutes. I just like to go ahead. If you had a question. I just want to mention briefly the jury instruction issue, if I may. And I think that it's basically just to mention that the Stone case. Its basic error was assuming that a felon cannot reasonably expect to possess a firearm free from restrictions. That's how can you direct this to us? I mean, Stone is maybe it was wrong, but Stone is directly on point. And it is. And Raheith expressly says, I mean, there's nothing you can read in Raheith, which goes in your favor on this issue. And even if the even if the government is theoretically reading too much into Raheith, it certainly is nothing, I think, that could let a panel of the court basically say Stone is so undermined we're going to overrule it. Well, the only thing I would add is the Bruin analysis really undercuts Stone's assumption that possession of firearms are not a protected and unlawful thing. Is there any court of appeals that's gone your way on this issue? I don't think it's not that I've seen yet. No. Do you want to reserve? Yes, please. Thank you. Thank you. Good morning, and may it please the court. Aaron Pennekamp, appearing for the United States. The district court did not clearly air when it found that the ends of justice demanded several continuances of Mr. Walker's trial date in the midst of the COVID-19 pandemic, a pandemic that this court has recognized is deadly serious and a pandemic that this court recognized in United States versus Olson justified exactly the kinds of time exclusions that were entered in this case. And that's true regardless of whether Mr. Walker objected to or agreed to any particular continuance, and that's because for each and every continuance, the district court made a substantial record about its concerns related to the COVID-19 pandemic. It balanced those concerns against Mr. Walker's interests, including the fact that he remained in pretrial custody, and it nevertheless concluded that the balance of the interests weighed in favor of ends of justice time exclusions. Nothing about that balancing act was clearly erroneous, and so this court should affirm. Do you agree that other trials were being conducted by other judges in the district during that period? If we're talking specifically about the summer of 2021, my understanding is that, yes, trials did restart during that time period, but not substantially sooner than Mr. Walker got his trial in August of 2021. And I just note to clarify the record somewhat, Mr. Walker had submitted several motions on March 26, 2021. The motions hearing for those three motions were held on May 10, 2021. The district court left one of those motions open. It was not yet submitted. Judge Mueller wanted to hold an additional ex parte hearing with the government's confidential informant to determine whether or not that informant's identity needed to be disclosed. So those hearings didn't happen until I believe it was mid-June 2021. The district court decided that motion on I think it was June 17, 2021. There was another defense motion May 20th, right? Which motion was that, Your Honor? My notes don't indicate that. I just have a chart with other defense motion May 20th. So I'm sorry if I may have been wrong. Understood. I do not recall what that specific motion was. But in any event, another thing happened that sort of extended the exclusion of time. The parties on June 16, 2021, filed a stipulation agreeing to exclude time under the ends of justice time exclusion through the set trial date, which was August 24, 2021. And then the parties filed another stipulation agreeing to exclude time through the new trial date in August 30 of 2021. So the bottom line is that the time from March 26, 2021, when the defense motions were filed through Mr. Walker's trial date, were covered by valid exclusions of time, either because motions were pending or because the parties had agreed, based on the need for additional defense preparation and the need for defense expert witnesses, that they needed additional time to prepare for trial. So your opponent primarily relies on Factor 7 in Olson that says factually a trial could have been conducted safely. What's your response to that? Your Honor, I think United States v. Olson forecloses that argument. The holding of Olson was that there is no impossibility requirement baked into the ends of justice time exclusion. In other words, even if it's theoretically possible that a trial could convene at some point sooner than the district court actually granted one, that in and of itself is not a reason to find the ends of justice don't support a delay in trial.  But I think it's a factor. I mean, Olson listed it as a factor. I mean, whether the district court has the ability to safely conduct a trial is the factor. What's in the record on whether or not under the specific circumstances at the time the district court retained the ability to safely conduct a trial? Your Honor, at several points the district court made a substantial record indicating what its concerns were with regard to the COVID-19 pandemic. The district court frequently reiterated that despite the fact that there are eastern district general orders that delayed jury trials broadly within the district, it was nevertheless not bound by those general orders. It could make its own case-specific findings. And it repeatedly stated that what it was doing was making a case-by-case inquiry as to Mr. Walker's case. We see this at ER 52 or at ER 68 to 71. ER 82, the district court says, I'm making the determination in each case. ER 86 to 87, the district court again reiterates that it's making a case-by-case determination for Mr. Walker's case based on the latest public health data. And I think what the district court was doing, and, again, it put this on the record, was that it was holding a meeting every two weeks with a committee that it had convened called the Facility Securities Committee. And in those meetings, the district court was being presented with the latest public health data, infection rates in the population surrounding the Sacramento community, later learning information about vaccination rates. So the district court was considering this on a biweekly basis, having hearings with the parties and making findings on the record about, look, the latest information just does not support the idea that I can convene a trial safely. Nothing about that fact-finding was clearly erroneous, and so this Court should affirm. Any further questions?  Thank you, Your Honor. Thank you. I just want to clarify that we're not relying on the kind of impossibility ruling that the Olson trial judge made. What we're relying on is the seventh factor in Olson, and the fact that there was no factual finding on this record made about vaccination rates, either in October, late October of 2020, or in January 26th of 2021, or when the motion to dismiss was fined or when the judge made its rulings. And I think that's the key fact thing that is missing, given the steps that Mr. Walker offered to take to reduce jury size, to do some creative jury selections where most people would be exposed to the greatest population density. This is a simple felon possession case, a very minimal number of witnesses, and our position is the case could have been tried within the speedy trial right period, and it wasn't, and a dismissal is required. Thank you. Thank you both for your arguments this morning. The case just argued will be submitted, and we appreciate you coming down from Sacramento to argue in person.
judges: THOMAS, BENNETT, Moskowitz